**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Donald Dunn,**
**Petitioner Below, Petitioner**

**v.)  No. 22-910** (Raleigh County CC-41-2020-C-47)

**Jonathan Frame, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Donald Dunn appeals a final order entered by the Circuit Court of Raleigh County on November 29, 2022, denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner alleges the court erred by not granting his petition based on his claims that (1) he was denied due process by the State's prejudicial remarks during closing argument, (2) he received ineffective assistance of counsel, (3) he was denied due process by the court's failure to instruct the jury on second-degree murder and the admission of gruesome photographs, and (4) cumulative error. Upon our review, we determine oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. P. 21(c).

The petitioner is serving life imprisonment without the possibility of parole after a jury convicted him for the first-degree murder of his stepfather and attempted first-degree murder of his mother. On direct appeal, this Court affirmed his convictions. *State v. Dunn*, 237 W. Va. 155, 786 S.E.2d 174 (2016).

In 2020, the petitioner filed a petition for a writ of habeas corpus, and the circuit court appointed counsel, who filed an amended petition. At an omnibus hearing in 2022, the petitioner raised the same arguments he now asserts on appeal, which are listed above.  The petitioner's trial counsel, David L. White, did not attend the omnibus hearing despite the petitioner's efforts to

---

[1] The petitioner appears by counsel Robert Dunlap. The respondent appears by counsel Patrick Morrisey, Attorney General; and Mary Beth Niday, Assistant Attorney General. Since the filing of this case, the Superintendent of Mount Olive Correctional Complex has changed, and the Superintendent is now Jonathan Frame. Accordingly, the Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

secure his appearance.[2] The only witness at the omnibus hearing was the petitioner, who testified that during the opening statement, trial counsel unexpectedly stated, "that my guilt wasn't an issue because I admitted it." The petitioner also testified that trial counsel "waited until jury selection to engage a plea," and "did my direct appeal without consulting me." Further, to explain why his trial counsel should have sought to bifurcate his trial, the petitioner testified that bifurcation of the guilt and penalty phases of his trial "seemed like a good idea, because it was the only way to get expert testimony into the trial."

After the hearing, the court ruled that that the prosecutor's remarks during closing arguments did "not rise to the level of a deprivation of the [p]etitioner's constitutional rights," and this issue was not appropriate for habeas relief. The remarks in question described "the murder as being in cold blood . . . the [p]etitioner as having ice water in his veins . . . [that] the [p]etitioner loved no one . . . that Osama Bin Laden may have been a loving son, and . . . the [p]etitioner as a wolf in sheep's clothing." The court found these statements to be prejudicial but isolated, and they did not "rise to the level of being improper . . . mislead the jury . . . or divert the jury's attention." The court also ruled that the prosecutor's remarks were not so damaging that they required reversal under Syllabus Point 6 of *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995), "because the proof of guilt in this matter is significantly high in light of the [p]etitioner's own admissions" and other evidence presented at trial.

Further, the circuit court denied the petitioner's claim of ineffective assistance of counsel, which was predicated on several alleged deficiencies from both trial and appellate counsel. First, the petitioner alleged that, during opening statement and without his consent, his trial counsel "essentially proffered to the jury" that the petitioner was guilty. In relevant part, trial counsel's opening statement began as follows:

> It is true, as [the State] has told you, that [the petitioner] has done some very bad things and there's nothing we can do to take it back. . . . And it truly is a tragedy . . . . [W]hat I will be asking you to do is not compound that tragedy by creating another tragedy, [which] would be to throw this young man's life away and reach a decision which would mean that he would never have an opportunity to be rehabilitated, to get out and have a realistic life if the parole board ever decided to release him and if the professionals examining him, and in the position of making those types of decisions decided that he would be appropriately released from prison at some point in time. . . . Obviously, he's going to have to be punished for what occurred, but the question is the severity of that punishment, whether you all believe, based on all the circumstances and the evidence in this case, that it would be appropriate to grant him mercy. . . . What [the State] said, generally speaking, was accurate . . . but one of the things that you'll hear is that these events were totally out of character for [the petitioner]. . . . And that's not to say that [the petitioner] is making an excuse or offering an excuse for what happened, he's not.

---

[2] This Court entered an order annulling Mr. White's license to practice law before the petition for habeas relief was filed. *Lawyer Disciplinary Board v. David L. White*, No. 17-0121 (W. Va. Jan. 3, 2018).

He's owned up to it and he's given a full confession to the police about what occurred.

After "considering the [p]etitioner's own admissions to investigating officers and on the stand" in conjunction with his counsel's plea for mercy during the opening statement, the court ruled that petitioner did not prove he was prejudiced by these remarks. The circuit court denied the petitioner's claim that trial counsel was ineffective by conceding guilt in his opening statement because the petitioner admitted his guilt to investigating officers and when he testified at trial. The court ruled that "considering the [p]etitioner's own admissions to investigating officers and on the stand, the [p]etitioner has not shown that a different outcome was reasonably probable." Thus, the petitioner did not satisfy the second prong of *Miller/Strickland*.

The petitioner also argued that trial counsel should have bifurcated the trial so that he could introduce expert testimony in the sentencing phase from a forensic psychologist, Dr. Clifton Hudson, that synthetic marijuana may have had an impact on his ability to think and make reasonable decisions.[3] The trial court ruled that this evidence would not be admissible in a unitary trial because it would have conflicted with Dr. Hudson's opinion that the petitioner's synthetic marijuana use did not affect his criminal responsibility, and "confuse[d] the jurors." But at trial, the petitioner was allowed to testify about his history of using synthetic marijuana, and that he was under the influence of it on the day he committed the crimes. The petitioner also testified that he was aware that synthetic marijuana was dangerous, it made him hallucinate, and once caused him to have a seizure. The habeas court found that "it was not unreasonable for trial counsel to decide against seeking bifurcation and elect to rely more on character evidence at the mercy stage as opposed to expert testimony," and found that counsel's conduct was not deficient under an objective standard of reasonableness.[4]

Next, the petitioner argued that trial counsel failed to discuss the possibility of a guilty plea and empaneling a jury only to decide mercy. The circuit court ruled that the petitioner presented no evidence to support his argument that satisfied either prong of *Miller/Strickland*. The court also pointed out that, during a pretrial hearing, "the [p]etitioner relayed to the trial court that he had a good relationship with [trial counsel] and that he was satisfied with this representation."

---

[3] On appeal, this Court ruled that *State v. Berry*, 227 W. Va. 221, 707 S.E.2d 831 (2011), controlled the resolution of the petitioner's "efforts to have Dr. Hudson inform the jury that his use of synthetic marijuana affected his ability to think rationally at the time of the offense. Under *Berry,* the trial court had discretion to preclude this evidence at a unitary trial." *Dunn*, 237 W. Va. at 164, 786 S.E.2d at 183. Because trial counsel did not seek to bifurcate his trial, this Court found "he waived his right to present evidence about the possible effects of synthetic marijuana." *Id.*

[4] *See* Syllabus Point 5 of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) (holding that claims of ineffective assistance of counsel are governed by the following two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984): "(1) [c]ounsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.").

3

The circuit court additionally rejected the petitioner's claim that appellate counsel rendered ineffective assistance on appeal because he failed to offer any evidence in support of counsel's purported ineffective assistance during trial. The court found that counsel raised six assignments of error in the petitioner's direct appeal, and this Court "issued a thorough 34-page opinion affirming the [p]etitioner's conviction." The court also found that the evidence "against the petitioner was overwhelming," and the petitioner did not demonstrate that his counsel "acted unreasonably or that a different outcome was reasonably probable under *Strickland*."

The circuit court also ruled that there was no evidence to support a second-degree murder instruction because "the evidence at trial showed that deliberation and premeditation [were] present in this case, as evidenced by the Petitioner's own admissions on the stand."[5] The court further ruled that "even if the trial court erred by refusing to include this instruction, the court's ruling would constitute ordinary trial error, which . . . is not appropriate for review on habeas." Rejecting the petitioner's claim that the trial court erroneously admitted certain photographs, the circuit court ruled that this issue was not appropriate for habeas relief because it alleged "ordinary trial error," rather than a constitutional violation, and the petitioner failed to raise this issue on direct appeal. Moreover, the court found that the admission of the photos did not prejudice the petitioner. Finally, the circuit court rejected the petitioner's argument regarding cumulative error because the petitioner failed to show that the court committed any error.

The petitioner appeals from the court's order denying his petition for habeas corpus relief. In reviewing a circuit court's order in a habeas action, we review "the final order and the ultimate disposition" for abuse of discretion, "the underlying factual findings" for clear error, "and questions of law" are reviewed de novo. Syl. Pt. 1, in part, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

First, the petitioner argues that the State's remarks during closing argument violated his right to due process. We have held that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." *Sugg*, 193 W. Va. at 393, 456 S.E.2d at 474, Syl. Pt. 5. But here, the petitioner did not timely object to the State's closing argument. It is well-settled law that an objection must be raised below to preserve an error or that error is waived. *See State v. Marple*, 197 W. Va. 47, 51, 475 S.E.2d 47, 51 (1996) (quoting *Meadows v. Holland*, 831 F.2d 493, 498 (4th Cir. 1987) ("West Virginia has always treated a failure to object to trial errors as a default of any right to assert these errors on direct appeal or in habeas review.").[6] Further, the petitioner did not pursue this argument in his direct appeal, and he has not rebutted "the presumption that he intelligently and knowingly waived any contention or ground for relief which theretofore he could

---

[5] At trial, the petitioner provided evidence of premeditation and deliberation when he testified that he wrote a fictitious murder/suicide note less than four hours before shooting and killing his stepfather and attempting to kill his mother. The note was purportedly written by the petitioner's mother and implied that she murdered the petitioner's stepfather before committing suicide. The petitioner failed in his attempt to kill his mother because his gun misfired.

[6] The petitioner has not argued that his trial counsel was ineffective for failing to object to the State's closing argument and, consequently, he has waived this error.

4

have advanced on direct appeal." Syl. Pt. 2, in part, *Ford v. Coiner*, 156 W. Va. 362, 196 S.E.2d 91 (1972). Accordingly, we decline to address this issue.

Second, the petitioner argues that the circuit court erred when it denied his claims of ineffective assistance of counsel. "We begin with an understanding that 'the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another.'" *Sowards v. Ames*, 248 W. Va. 213, 227, 888 S.E.2d 23, 37 (2023) (quoting *Miller*, 194 W. Va. at 16, 459 S.E.2d at 127). To establish ineffective assistance, the petitioner must demonstrate that "(1) [c]ounsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Miller* at 6, 459 S.E.2d at 117, Syl. Pt. 5, in part (citing *Strickland*). When reviewing counsel's performance, a court must "ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue," *Id.* at 16, 459 S.E.2d at 127, and "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]'" *Id.* at 15, 459 S.E.2d at 126 (quoting *Strickland*, 466 U.S. at 689). Further, when deciding ineffective assistance claims, "a court need not address both prongs of the conjunctive standard of [*Strickland*/*Miller*] but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." Syl. Pt. 5, in part, *Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).

Likening his case to *McCoy v. Louisiana*, 584 U.S. 414 (2018), the petitioner argues that his trial counsel was ineffective because he conceded the petitioner's guilt during his opening statement without obtaining the petitioner's consent to do so. But *McCoy* does not support the petitioner's position. In *McCoy*, defense counsel told the jury that his client was guilty of murdering his family members, despite Mr. McCoy's insistence that he was innocent and his alibi that he was out of state at the time. The United States Supreme Court ruled that counsel's admission of Mr. McCoy's guilt violated his "[a]utonomy to decide that the objective of the defense is to assert innocence[,]" which is guaranteed by the Sixth Amendment. *McCoy*, 584 U.S. at 422. Importantly, the Court did not reach this result by applying its "ineffective-assistance-of-counsel jurisprudence" because Mr. McCoy's "autonomy, not counsel's competence, [was] in issue." *Id.* at 415 (citing *Strickland*, 466 U.S. at 668). Further, this case is factually distinguishable from *McCoy*. Unlike Mr. McCoy, the petitioner did not decide that "the objective of the defense [was] to assert innocence . . . ." *Id.* at 422. Rather, the petitioner admitted at trial that he killed his stepfather and attempted to kill his mother and created a bogus murder/suicide note in an attempt to cover up his crimes. Even though the petitioner now claims on habeas that he "did not agree with the strategy of conceding that he committed the crimes," his admissions of guilt and plea for mercy at trial were aligned with counsel's opening statement, which indicates that counsel did not concede the petitioner's guilt without his consent. Thus, after careful consideration, we find the circuit court committed no error when it denied habeas relief on this issue.

The petitioner also argues that trial counsel was ineffective because he did not discuss the option of bifurcating the petitioner's trial so that he could introduce expert testimony from Dr. Hudson during the penalty phase regarding the effects of the petitioner's use of synthetic marijuana. But the petitioner has not demonstrated how he was prejudiced by the absence of Dr. Hudson's testimony in the mercy phase of a bifurcated trial. Indeed, the petitioner did not present Dr. Hudson as a witness at the omnibus hearing, and he does not otherwise offer any evidence of

what Dr. Hudson would have testified to at trial or how "the jury would have reached a different result" if Dr. Hudson had testified during the mercy phase of a bifurcated trial. *See Miller*, 194 W. Va. at 15, 459 S.E.2d at 126. Thus, under the circumstances, the circuit court did not err when it denied habeas relief on this issue.

The petitioner next claims that trial counsel was ineffective because he did not advise the petitioner that he could "plead guilty and still empanel a jury for sentencing." The petitioner also claims his appellate counsel was ineffective because he did not assign error to the State's allegedly prejudicial closing argument, the circuit court's failure to instruct the jury on second-degree murder, the admission of "gruesome photos," and he did not allege cumulative error. Though generally raised as assignments of error, the petitioner has failed to argue or adequately brief these issues. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides that briefs "must contain an argument clearly exhibiting the points of fact and law presented . . . ." "Furthermore, this Court has adhered to the rule that '[a]lthough we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.'" *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (quoting *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996)). Because the petitioner's brief does not offer any relevant law or argument to establish these claims, we decline to address them.

Third, the petitioner argues that the circuit court should have granted habeas relief because the trial court violated his right to due process when it failed to instruct the jury on second-degree murder. We have long held that "[w]here there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser offense, then the defendant is not entitled to a lesser included offense instruction." Syl. Pt. 2, *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982). Here, the petitioner testified that, less than four hours before shooting and killing his stepfather and attempting to kill his mother, he created a fictitious murder/suicide note to make it appear that his mother killed his stepfather and then committed suicide. This evidence tends to prove that the petitioner premeditated and deliberated before killing his stepfather, which supports a jury instruction on first-degree murder.[7] Thus, we have no difficulty concluding that there was sufficient evidence that the petitioner was guilty of first-degree murder, so the petitioner was not entitled to an instruction on second-degree murder, and the court did not err when it denied habeas relief on this ground.

The petitioner also argues that the admission of "gruesome photos" into evidence violated his right to due process. Although the petitioner attempts to frame this issue as a due process violation, he argues that "the probative value of the photographs [was] substantially outweighed by the unfair prejudice created by the gruesome and gory photographs." This argument belies the petitioner's attempt to categorize this issue as a due process violation, and it is apparent that his argument is grounded in an alleged violation of the West Virginia Rules of Evidence. *See State v.*

---

[7] *See* Syl. Pt. 5, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) ("[T]here must be some period between the formation of the intent to kill and the actual killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed."); *accord* Syl. Pt. 4, *State v. Zuccaro*, 239 W. Va. 128, 799 S.E.2d 559 (2017).

*Derr*, 192 W. Va. 165, 178, 451 S.E.2d 731, 744 (1994) (ruling that "the admissibility of photographs over a gruesome objection must be determined on a case-by-case basis pursuant to Rules 401 through 403"). It is well established that "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, *McMannis v. Mohn*, 163 W. Va. 129, 254 S.E.2d 805 (1979). Further, "State court evidentiary rulings respecting the admission of evidence are cognizable in habeas corpus only to the extent they violate specific constitutional provisions or are so egregious as to render the entire trial fundamentally unfair and thereby violate due process under the Fourteenth Amendment." *Hatcher v. McBride*, 221 W. Va. 5, 11, 650 S.E.2d 104, 110 (2006) (citations omitted). Because the petitioner's "gruesome photos" argument is based upon the trial court's evidentiary rulings, and there is no indication of a constitutional violation or that the admission of the photos rendered the entire trial fundamentally unfair, we decline to address this issue.

Finally, the petitioner argues that the circuit court erred when it denied habeas relief based on cumulative error. Because we find no error in this case, the cumulative error doctrine has no application. We have held that

> "'[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.' Syllabus point 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972)."

Syl. Pt. 7, *State v. Tyler G.*, 236 W. Va. 152, 778 S.E.2d 601 (2015). "We have cautioned, however, that mere allegations of error cannot form the basis for application of the cumulative error doctrine." *Frank A. v. Ames*, 246 W. Va. 145, 175, 866 S.E.2d 210, 240 (2021). Thus, we conclude that "[b]ecause we have found no errors, this assignment need not be addressed." *State v. Trail*, 236 W. Va. 167, 188 n.31, 778 S.E.2d 616, 637 n.31 (2015) (citing *State v. Knuckles*, 196 W. Va. 416, 426, 473 S.E.2d 131, 141 (1996)).

For the foregoing reasons, we affirm the November 29, 2022, order of the Circuit Court of Raleigh County.

Affirmed.

**ISSUED:** January 10, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV